**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

------------------------------------------------------------------X
DONNA CIOMCIA, individually and on behalf
of all others similarly situated,

                      Plaintiff,          **Case No: 2:17-cv-14444**

       -against-

BEALL'S, INC.,

                      Defendant.
------------------------------------------------------------------X

**MOTION FOR ORDER APPROVING SETTLEMENT OF**
**COLLECTIVE ACTION AND AUTHORIZING NOTICE OF SETTLEMENT**

Plaintiff Donna Ciomcia (the "Named Plaintiff"), individually and on behalf of the collective of individuals she represents (collectively, "Plaintiffs"), and Defendant Beall's, Inc. ("Beall's" or "Defendant") file this Joint Motion for Approval of Settlement and request that the Court approve the Parties' Joint Stipulation and Release (the "Agreement") and dismiss this action with prejudice.

**INTRODUCTION**

The settlement memorialized in the Parties' Agreement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it was reached after significant information exchange and contested litigation, and was the result of arm's length settlement negotiations conducted by experienced counsel well-versed in wage and hour law. Accordingly, the Parties request that the Court: (1) approve as fair, adequate, and reasonable the $175,000.00 settlement set forth in the Agreement (Exhibit 1); (2) certify the collective for settlement purposes only; (3) approve the proposed Notice of Settlement ("Notice Form") attached to the Agreement (Exhibit B to Exhibit 1) and the proposed distribution method; (4)

1

approve Settlement Services, Inc. as the Settlement Administrator; (5) award Plaintiffs' attorneys fees and costs in the amount of $85,000.00; (6) award a Service Award of $5,000.00 to the Named Plaintiff; (7) dismiss the lawsuit with prejudice; (8) retain jurisdiction to enforce the settlement; and (9) grant any other further relief that this Court deems just and proper.

## FACTUAL AND PROCEDURAL BACKGROUND

The Named Plaintiff filed this lawsuit on December 20, 2017. D.E. 1. Both prior to and after the Court conditionally certified the FLSA collective, numerous additional Area Managers opted into this case (collectively with the Named Plaintiff, "Plaintiffs"). All Plaintiffs were employed by Defendant as exempt Area Managers. Plaintiffs assert that they were misclassified as exempt and were not paid for overtime worked in excess of 40 hours per workweek in violation of the FLSA. More specifically, Plaintiffs contend that management was not their primary duty. Rather, Plaintiffs contend that their primary duties were substantially similar to those of non-exempt employees and included: customer service, working the cash register, selling merchandise, restocking merchandise, unloading trucks, and cleaning the store. Plaintiffs further allege that Area Managers were expected to and regularly did work more than 40 hours per workweek without overtime compensation, in violation of the FLSA.

Defendant denies Plaintiffs' allegations in their entirety and contends that Area Managers were properly classified as exempt under one or more exemptions to the FLSA's overtime provisions, and properly compensated for all time worked. Specifically, Defendant asserted that Plaintiffs and other Area Managers were exempt under the administrative and/or executive exemptions.

Both before and during the litigation, the Parties and their counsel conducted a thorough investigation into the merits of their respective claims and defenses. Plaintiffs' Counsel

conducted in-depth interviews with the Plaintiffs and other witnesses, obtained statements, and reviewed extensive written materials including time records, pay records, job descriptions, training manuals, performance standards and evaluations, disciplinary actions, and correspondence. Defendant's counsel likewise engaged in an extensive investigation and review of documents. The Parties engaged in written discovery and thousands of pages of documents were exchanged and reviewed. Defendant deposed the Named Plaintiff.

On February 7, 2018, Plaintiff filed a Motion to Conditionally Certify Action and to Authorize Notice. D.E. 16. Following the full briefing of that motion by both Parties, the Court granted the Motion by Order dated September 7, 2018, D.E. 53, and by further Order dated October 9, 2018, D.E. 56, approved the form and authorized the mailing of notice to a conditionally certified collective of Area Managers employed by Defendant. Accordingly, notice of their right to opt into the litigation was mailed to 165 Area Managers, and thereafter 27 Area Managers timely opted into the litigation, for a total of 34 Area Managers participating in this case.

Throughout the litigation, the Parties engaged in negotiations through their attorneys, which culminated in a Settlement Term Sheet on February 28, 2019. Thereafter, the Parties negotiated the details of the full and final settlement of this litigation, and drafted the Agreement and Notice Form, attached hereto as Exhibit 1, and Exhibit B to Exhibit 1, respectively. The Agreement was fully executed on May 2, 2019.

Pursuant to the Parties' Agreement, the group of employees who will receive the Notice Form include all current and former Beall's employees who held the position of exempt Area

Manager from December 20, 2014 through October 23, 2016[1] and who timely returned a consent to join this this lawsuit by December 8, 2018, when the notice period closed ("Eligible Settlement Class Members"). Including the Named Plaintiff, there are a total of 34 Eligible Settlement Class Members. The Agreement also resolves attorneys' fees and costs and provides for a Service Award to the Named Plaintiff for her efforts in obtaining a settlement for the FLSA collective.

The Agreement negotiated and achieved by the Parties constitutes a reasonable compromise of all of the disputed issues raised by the Plaintiffs in this action. All Parties were counseled and represented by their respective attorneys throughout the settlement process. The Parties now seek Court approval of the Agreement and Notice Form, attached hereto as Exhibit 1, and Exhibit B to Exhibit 1, respectively.

## SUMMARY OF THE SETTLEMENT TERMS

**I.     The Gross Settlement Amount.**

The Parties have agreed that the Gross Settlement Amount will be $175,000.00 which includes: (i) a total of $5,000.00 to the Named Plaintiff as a Service Award; and (ii) $85,000.00 representing full payment of Plaintiffs' Counsel's attorneys' fees associated with this lawsuit, including but not limited to the negotiation, preparation, and execution of the Agreement, seeking and obtaining Court approval of the Agreement, and supervision of the administration of the notice process and payment to the Eligible Settlement Class Members, along with Plaintiffs' litigation costs, inclusive of the costs of administration. The remaining $85,000 comprises the

---

[1]     The relevant period stops at October 23, 2016 because Defendant reclassified the Area Manager position as non-exempt after that date.

Net Settlement Fund, from which those of the 34 Eligible Settlement Class Members who participate in the settlement will receive payment.

## II.     Eligible Settlement Class Members.

Eligible Settlement Class Members include all current and former employees of Beall's who held the position of exempt AM from December 20, 2014 through October 23, 2016, and who timely returned a consent to join this case prior to the expiration of the December 8, 2018 notice period.  *See* Agreement (Exhibit 1) at ¶ 1.6.  There are 34 Eligible Settlement Class Members to whom Notice will issue.

Within ten (10) days of the entry of an Order Granting Approval of Settlement ("Approval Order"), Defendant will provide a list of each Eligible Settlement Class Member's social security numbers and Eligible Workweeks (defined as all weeks worked by each Eligible Settlement Class Member as an exempt AM between December 20, 2014 through October 23, 2016).  *Id.* at ¶¶ 1.7, 2.6.  Within ten (10) days of the entry of the Approval Order, Plaintiffs' Counsel will provide the Settlement Administrator with a list of each Eligible Settlement Class Member's contact information.  *Id.* at ¶ 2.6.  Within five (5) days of the entry of the Approval Order becoming a non-appealable, final order, the Settlement Administrator will mail the approved Notice Form and Settlement Checks to all Eligible Settlement Class Members.  *Id.* at ¶ 2.8.  The Notice Form alerts each Eligible Settlement Class Member to the terms of the settlement, their individual settlement allocation, the scope of the release if they elect to negotiate the Settlement Check, and the timetable for participation.  *Id.* at Exhibit B.

## III.    Eligible Settlement Class Member Allocation Formula.

The Net Settlement Fund will be allocated among the Eligible Settlement Class Members.  *Id.* at ¶ 3.4(D).  Each Eligible Settlement Class Member's estimated proportionate

share of the Net Settlement Fund will be determined by the Settlement Administrator in accordance with the allocation formula in the Agreement, which is based on the number of workweeks each Eligible Settlement Class Member worked as an exempt Area Manager from December 20, 2014 through October 23, 2016.[2] *Id.* The calculation of Eligible Workweeks shall be based on Defendant's business records.

**IV. Releases.**

Eligible Settlement Class Members who participate in the settlement by negotiating their Settlement Check ("Participating Settlement Class Members") will release any wage and hour claims they may have against Beall's, whether actual or potential, including all FLSA claims. *Id.* at ¶ 4.1. Specifically, by cashing their Settlement Check, each Participating Settlement Class Member will waive, release, and forever discharge Beall's, Inc., Beall's Stores, Inc., and all of their subsidiaries, predecessors, affiliates, business units, members, shareholders, and their predecessors and successors, officers, directors, agents, employees, and assigns from any and all wage and hour claims asserted in the litigation or that could have been so asserted under the FLSA or state law based on the allegations in the Complaint in the litigation that accrued during their employment as an exempt AM through October 23, 2016, including claims for liquidated damages, attorneys' fees, costs and expenses. *Id.* Any Eligible Settlement Class Member who does not timely negotiate their Settlement Check will *not* be bound by any release of claims. *Id.* at ¶ 4.2.

---

[2] Defendant disputes that the period identified in Section 1.7 of the Agreement would have been the appropriate statute of limitations for each Eligible Settlement Class Member. Without resolving that dispute, Defendant acknowledges that Named Plaintiff and the Eligible Settlement Class Members have agreed to distribution of the Net Fund based on the formula articulated in Section 3.4 of the Agreement. Defendant takes no position with respect to that agreement between Named Plaintiff and the Eligible Settlement Class Members for purposes of the Agreement or this motion.

The Named Plaintiff also will execute a general release of all claims against Defendant in exchange for the Service Award referenced in Section V., *infra*. Agreement (Exhibit 1) at ¶ 4.3.

**V.     Service Award.**

The Agreement provides that the Named Plaintiff will receive, subject to Court approval, a Service Award of $5,000.00 in recognition of the assistance she provided in obtaining the overall settlement for the collective. *Id.* at ¶ 3.3(A). As described herein, Named Plaintiff participated in discovery and provided substantial assistance to Plaintiffs' Counsel, including extensive meetings, conferences, responding to written discovery, appearing for deposition which necessitated her travel from her residence in California to Florida, and the production and review of documents, in addition to lending her name to this lawsuit. Named Plaintiff will receive the Service Award, to be paid out of the Gross Settlement Amount, for her work in prosecuting this collective action lawsuit. Defendant does not oppose the proposed Service Award.

**VI.    Claims Administration.**

The Parties have retained Settlement Services, Inc. to serve as the Settlement Administrator. The claims administration fee of no more than $13,650.00 will be paid out of the Gross Settlement Amount.

**VII.   Attorneys' Fees and Litigation Costs.**

Under the terms of the Agreement, subject to Court approval, the Parties agree that Plaintiffs' Counsel will receive $85,000.00 which represents payment of all reasonable attorneys' fees and reasonable costs associated with the litigation, inclusive of Settlement Services, Inc.'s costs associated with administration of the settlement. *Id*. at ¶ 3.2(A). Defendant does not oppose such amounts.

**ARGUMENT**

**I.      Standards for FLSA Settlements.**

The Parties to an FLSA action can resolve the dispute and enter into a valid waiver of an employee's FLSA claims where: (i) the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor, or (ii) the parties present a proposed settlement to a district court which approves the fairness of the settlement. *See Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). In discussing the approval of FLSA settlements, the Eleventh Circuit has noted:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354; *see also Jones v. First Fin. of S. Fla., Inc.*, 2019 U.S. Dist. LEXIS 51868, at *1-2 (S.D. Fla. Mar. 26, 2019) (citations omitted).

"The Court should be mindful of the strong presumption in favor of finding a settlement is fair." *Crankshaw v. NCL Corp.*, 2018 U.S. Dist. LEXIS 42788, at *7 (S.D. Fla. Mar. 14, 2018) (citing *Cotton v. Hinton*, 559 F. 2d 1326, 1331 (5th Cir. 1977)[3]). An FLSA settlement may be approved as fair even where plaintiffs receive in settlement substantially less than the amount they originally claimed. *Rutland v. Visiting Nurse Assoc. of Central Fla., Inc.*, 2008 U.S.

---

[3] *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (all decisions from the Fifth Circuit prior to October 1, 1981, are binding on the Eleventh Circuit).

Dist. LEXIS 61776 (M.D. Fla. July 29, 2008). Discovery – including the production of records – as well as the risks associated with litigation and the viability of certain defenses, all may cause a plaintiff to settle for substantially less than the original amount claimed. *See id.* (approving FLSA settlement where named plaintiff settled for approximately 6% of the wages she originally claimed). In addition, the dispute over the proper method for calculating damages ("time-and-one-half" versus the "half-time" or "fluctuating workweek" method), liquidated damages, and the applicable statute of limitations may cause an FLSA plaintiff to accept substantially less in settlement than originally claimed. *See Ford, supra* (approving FLSA settlement where one opt-in plaintiff settled for less than 3% of his original claimed back wages).

## II. The Recovery to the Eligible Settlement Class Members Is Fair and Reasonable.

Here, the settlement is fair because it is a reasonable compromise of the claims of the 34 Plaintiffs. As discussed above, the relevant period in this matter is December 20, 2014 to October 23, 2016.[4] While the claims of many Eligible Settlement Class Members would have expired or been otherwise limited pursuant to the FLSA's two-year statute of limitations, Plaintiff negotiated a full three-year statute of limitations period based on the date of filing of the Complaint to allow a larger number of individuals to benefit from the Agreement and receive a settlement award.

Additionally, this was a hotly contested litigation in which Defendant put forth several "lack of willfulness defenses" and other arguments that may have presented barriers to Plaintiffs' success on the merits and ability to prosecute the claims on behalf of a collective. First, Defendant intended to seek decertification of the collective because of the alleged differences in the performance of duties by the various Eligible Settlement Class Members. Second, Defendant

---

[4] Subject to Defendant's position described in Footnote 2 of this motion.

argued that the Eligible Settlement Class Members' primary duties were managerial in nature and Eligible Settlement Class Members were properly classified as exempt under the executive and/or administrative exemptions. Third, Defendant maintained that its records did not establish the Plaintiffs worked the hours they claimed. Fourth, Defendant argued that even if Plaintiffs prevailed on liability, damages should be calculated using the half-time/fluctuating workweek method prescribed by 29 C.F.R. § 778.114, rather than the time and one-half method, given the status of the documentary evidence in the case. These issues, as well as others asserted by Defendant, presented significant hurdles for Plaintiffs to overcome. However, through negotiation, the Parties reached a compromise that took into consideration all of these factors. *Mohamed v. Cogint, Inc.*, 2019 U.S. Dist. LEXIS 33948, at *3 (S.D. Fla. Mar. 1, 2019) ("Where, as here, a settlement agreement was entered into in an adversarial context with all parties represented by experienced counsel throughout the litigation, the settlement agreement is 'more likely to reflect a reasonable compromise' over disputed issues.") (citations omitted).

     As a result of these negotiations, on average, each Participating Settlement Class Member will receive a gross share of the settlement equivalent to approximately $2,500.00. This amount represents a fair and reasonable settlement given the risk of decertification, the defenses raised (including Defendant's contention that the position was properly classified as exempt and that a two-year statute of limitations should apply), uncertainties surrounding the amount of unpaid overtime claimed, and the potential application of a half-time measure of damages.

     Given these factors, the settlement and the formula according to which each Eligible Settlement Class Member will receive their share of the ultimate amount paid to Participating Settlement Class Members represents a fair and reasonable compromise of the claims in this litigation.

### III. The Proposed Notice Form Should Be Approved.

The Court should approve the proposed Notice Form attached as Exhibit B to the Agreement. The proposed Notice Form sufficiently informs each Eligible Settlement Class Member of the Agreement's terms, including the allocation formula, the amount they will receive, the scope of the release, applicable time-table, and the approved service awards, attorneys' fees and costs.

### IV. The Service Awards Should Be Approved.

The Agreement also provides for a Service Award to the Named Plaintiff in recognition of the assistance she provided in obtaining the overall settlement for the Eligible Settlement Class Members. The Named Plaintiff submits that the Service Award is appropriate to compensate Named Plaintiff for her diligence, commitment, and investment – in terms of time, money and "sweat equity." Named Plaintiff asserts that such payments are further warranted because she identified the claims asserted and led this collective action lawsuit by participating in discovery and extensive meetings and conferences, responding to questions, reviewing, analyzing and interpreting documents, appearing for deposition, and aiding Plaintiffs' Counsel in settlement negotiations. Defendant does not oppose Named Plaintiff's request for a Service Award.

Given the time and effort expended by the Named Plaintiff, the Named Plaintiff asserts that the Service Award is warranted in this action. Representation payments to compensate named and opt-in plaintiffs for their diligence and involvement are routinely approved in FLSA collective actions by federal courts in Florida. *See, e.g.*, *Cooper-Gutteman, et al. v. TMS Health, LLC, et al.*, Case No. 9:13-cv-81265-KAM, D.E. 38 (S.D. Fla. July 15, 2015) (granting service awards in amounts as high as $10,000.00 to six plaintiffs for the assistance they provided in

11

obtaining the settlement for the class); *Evans v. Comcast Corp., et al.*, Case No. 9:12-cv-81203-KAM, D.E. 157 (S.D. Fla. Oct. 22, 2014) (granting service awards totaling $15,000.00 to five plaintiffs who sat for deposition); *Mosser v. TD Bank, N.A. (In re Checking Account Overdraft Litig.*, MDL No. 2036), 2013 U.S. Dist. LEXIS 187627, at *91 (S.D. Fla. Mar. 18, 2013) (granting incentive awards as high as $10,000.00 to named plaintiffs in Rule 23 class for the actions they took to protect the claimants, the degree to which others benefited, and the amount of time and effort the plaintiffs expended); *Torres v. Bank of Am.(In re Checking Account)*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011) (granting service awards as high as $5,000.00 to each plaintiff and acknowledging that "[t]here is ample precedent for awarding incentive compensation[.]" (citing *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006)); *David v. Am. Suzuki Motor Corp.*, 2010 U.S. Dist. LEXIS 146073, at *19-20 (S.D. Fla. Apr. 15, 2010) (granting incentive award of $5,000.00 in Rule 23 class action were plaintiff "participated actively in the ligation from start to finish[.]"); *see also, Hosier v. Mattress Firm, Inc.,* 2012 U.S. Dist. LEXIS 94958 (M.D. Fla. June 8, 2012) (FLSA action); *Signorelli, et al. v. UtiliQuest*, 2008 U.S. Dist. LEXIS 109357 (M.D. Fla. July 25, 2008) (hybrid FLSA/Rule 23 action); *Su v. Electronic Arts, Inc*., 2006 U.S. Dist. LEXIS 98894 (M.D. Fla. Aug. 29, 2006) (FLSA action); *Shores v. Publix Super Markets, Inc.*, Case No.: 95-1162-CIV-T-25E, D.E. 319, at 90-91 (M.D. Fla. May 23, 1997).

**V.     Attorneys' Fees and Litigation Costs and Expenses and Settlement Claims Administration.**

Under the terms of the Parties' Agreement, subject to Court approval, the Parties agree that Plaintiffs' counsel will seek an award of attorneys' fees and reimbursement of reasonable litigation costs and expenses (inclusive of the Settlement Administrator's expenses) which shall not exceed $85,000.00, as compensation for their work in this case and the additional work to be

performed in connection with the administration of the settlement. Exhibit 1 at ¶ 3.2(A). Pursuant to the Agreement, any attorneys' fees or expenses not awarded by the Court will revert to Defendant. *Id.* at ¶ 3.2(B). Thus, the Court's award of attorneys' fees and costs will not reduce, diminish or otherwise compromise the back-wages and other payments to the Eligible Settlement Class Members. Rather, the attorneys' fees and costs are above and beyond the amount to be paid to the Eligible Settlement Class Members, such that their recoveries are not reduced due to the fees and costs incurred on their behalf. Defendants do not oppose the amount to be allocated as attorneys' fees and costs as set forth in the Agreement.

Of the $85,000.00 sought for attorneys' fees and costs, $13,650.00 is to be paid to Settlement Services, Inc. for its services as Settlement Claims Administrator, including their fees and costs associated with formatting, printing and mailing the Notice; calculating individual settlement amounts and distributing Settlement Checks; determining and remitting tax withholdings; communicating with counsel for the Parties and Eligible Settlement Class Members; and performing other activities and services associated with the administration of the settlement. This amount is the cap proposed by Settlement Services, Inc. in connection with their bid to be retained as Claims Administrator.

Additionally, of the $85,000.00 sought for attorneys' fees and costs, $8,046.64 represents actual costs and expenses incurred by Plaintiffs' counsel, including court fees, service of process, deposition transcript and photocopying, postage/express mail, telephone, Pacer/Lexis research, and similar, out-of-pocket-costs. The expenses incurred in the prosecution of this case are reflected on the books and records of Plaintiffs' counsel, which are available for submission to the Court upon request. These books and records are prepared from expense vouchers, receipts, and check records; are accurate regarding all the expenses incurred; and constitute hard, out-of-

pocket monetary expenses from the beginning of the case. Plaintiffs' counsel was aware such costs and expenses might not be recovered and, at the very least, would not be recovered until the litigation was successfully resolved.

Finally, the balance of $63,303.36 represents an award of attorneys' fees for the work performed by Plaintiffs' counsel. Plaintiffs' counsel have incurred lodestar fees in the amount of $156,660.00. This amount does not take into consideration the time to be incurred through completion of the settlement administration process, which based on Plaintiffs' counsel's experience, will be significant and will include resolving issues with the Settlement Administrator and Defendants' counsel, and speaking with Eligible Settlement Class Members and Participating Settlement Class Members about the administration and the settlement.

Thus, the requested fee of $63,303.36 for Plaintiffs' counsel's work is significantly less than the actual fees incurred (and to be incurred) and represents a negative multiplier of 0.4 (which will be further reduced through the completion of the administration process). This reflects the time actually spent, in the exercise of reasonable judgment by the lawyers and staff involved and is reflected in the detailed time records for each of the firms. The work undertaken represents the work addressed above in connection with the investigation and filing of the lawsuit, the work undertaken in conjunction with the discovery of the case and the work involved in negotiating and effectuating the Agreement. Each of the firms involved in the case had expertise and knowledge with respect to aspects of the litigation, including extensive and successful records in class action and wage hour litigation. The firms also communicated regularly so as to ensure that there was not unnecessary time incurred, nor duplication of effort.

Plaintiffs' counsel are seeking this fee award in lieu of attorney's fees that Plaintiffs' counsel might otherwise have been entitled to recover under 29 U.S.C. Section 16(b) had they

ultimately prevailed. The settlement of attorneys' fees and costs was independent and agreed upon separately from the amounts calculated to be owed to Eligible Settlement Class Members.[5] "The parties may demonstrate the reasonableness of the attorney fees . . . [if] the parties agreed to plaintiff's attorney fees separately and without regard to the amount paid to settle the plaintiff's FLSA claim." *Dearth v. Hartford Fire Ins. Co.*, 2019 U.S. Dist. LEXIS 54069, at *7 (M.D. Fla. Mar. 28, 2019). "[W]hen attorney's fees are negotiated separately from the payment to plaintiff(s), 'an in depth analysis [of the reasonableness of the fees] is not necessary unless the unreasonableness is apparent from the face of the documents." *Gertz v. Coastal Reconstruction*, 2014 U.S. Dist. LEXIS 130302, *5 (M.D. Fla. Sept. 10, 2014) (citing *McGinnis v. Taylor Morrison*, Inc., 2010 U.S. Dist. LEXIS 143198 (M.D. Fla. Jan. 23, 2010); *King v. My Online Neighborhood, Inc.*, 2007 U.S. Dist. LEXIS 16135 (M.D. Fla. Mar. 7, 2007)) (internal bracket in original); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (same). "As long as counsel does not seek to recover anything further from Plaintiff, the recovery is not compromised by the fee agreement and the Court sees no reason to review it further." *Garzon v. ProSweep Cent. Fla., LLC*, 2011 U.S. Dist. LEXIS 134703, *6 (M.D. Fla. Nov. 17, 2011). Thus, there is "no need to further scrutinize amount allocated for attorneys' fees and costs [as] they were negotiated separately and apart from the compensation paid to Plaintiff." *Welch v. Moonlite Hospitality Servs., LLC*, 2011 U.S. Dist. LEXIS 137145, *5, n. 2 (M.D. Fla. Nov. 28, 2011) (citations omitted). Accordingly, Plaintiffs' request for attorneys' fees, costs, and settlement administration expenses should be approved. *Dearth*, 2019 U.S. Dist. LEXIS 54069,

---

[5] During the parties' settlement negotiations, they discussed separately the specific amounts to be allocated to back wages and the amounts that Plaintiffs' Counsel would seek in fees and costs, which were to be separate and independent from the amount sought for back wages for Plaintiffs, before reaching a final agreement on the total settlement amount.

at *11 ("Plaintiffs' counsel first established the amount Plaintiffs required to settle the case, without regard to attorneys' fees, and attorneys' fees were separately agreed upon without affecting Plaintiff's recovery. . . . Based on these representations, there is no reason to believe that the amount Plaintiffs agreed to accept was adversely affected by the amount of fees paid to their counsel.").

## VI. An Objection Process Is Not Warranted.

This case involves **only** an FLSA **opt-in** collective action and **not** a Federal Rule 23 **opt-out** class action. Eligible Settlement Class Members who elect not to participate in the settlement and who do not negotiate their Settlement Check will **not** release their overtime claims. Exhibit 1 at ¶ 4.2. Accordingly, there is no need for an objection process here as Eligible Settlement Class Members will not be bound by the settlement and release of claims unless they voluntarily choose to participate.

In an "FLSA action, unlike in a Rule 23 class action, a named plaintiff can represent others only when they affirmatively opt-in to the case." *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 708 (11th Cir. 2014). The Eleventh Circuit has also explained that "it is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure." *Morgan*, 551 F.3d at 1259 n. 36 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n. 12) (11th Cir. 1996). For this reason, the due process considerations which are analyzed in the approval of a settlement of a Rule 23 opt-out class action are inapplicable to the approval of the settlement an FLSA opt-in collective action. *Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983) ("the due process concerns [in Rule 23 opt-out class actions] . . . have no counterpart in a section 16(c)

class action."); *see also Dolan v. Project Constr. Corp.*, 725 F.2d 1263, 1266 (11th Cir. 1984) (same).

Moreover, when the Eligible Settlement Class Members joined this case after receiving notice, they each executed a Consent to Join Form which expressly stated in relevant part "I hereby designate Plaintiffs' counsel to represent me in the suit and to make decisions on my behalf concerning the litigation and settlement and agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable." Thus, an objection process is not warranted here.

## CONCLUSION

The Settlement is reasonable and fair in all respects, particularly considering that at all times this litigation was vigorously contested. Accordingly, **the Parties jointly stipulate that final class certification is appropriate for the collective**, *see Goldsby v. Renosol Seating, LLC*, 294 F.R.D. 649, 656 (S.D. Ala. 2013), and respectfully request the Court approve the settlement as a fair and reasonable compromise of these contested FLSA claims.

**WHEREFORE,** the Parties respectfully request this Court enter an Order (1) approve as fair, adequate, and reasonable the $175,000.00 settlement set forth in the Agreement (Exhibit 1); (2) certify the collective for settlement purposes only; (3) approve the proposed Notice of Settlement ("Notice Form") attached to the Agreement (Exhibit B to Exhibit 1) and the proposed distribution method; (4) approve Settlement Services, Inc. as the Settlement Administrator; (5) award Plaintiffs' attorneys fees and costs in the amount of $85,000.00; (6) award Service Awards of $5,000.00 to the Named Plaintiff; (7) dismiss the lawsuit with prejudice; (8) retain jurisdiction to enforce the settlement; and (9) grant any other further relief that this Court deems just and proper.

Dated: May 8, 2019
     Boca Raton, FL

Respectfully submitted,

By: *s/ Gregg I. Shavitz*
Gregg I. Shavitz
E-mail: gshavitz@shavitzlaw.com
Paolo C. Meireles
E-mail: pmeireles@shavitzlaw.com
Logan Pardell
E-mail: lpardell@shavitzlaw.com
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Rd, Ste 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

Marc S. Hepworth*
E-mail: mhepworth@hgrlawyers.com
Charles Gershbaum*
E-mail: cgershbaum@hgrlawyers.com
David A. Roth*
E-mail: droth@hgrlawyers.com
Rebecca S. Predovan*
E-mail: rpredovan@hgrlawyers.com
Janine Kapp*
E-mail: jkapp@hgrlawyers.com
**HEPWORTH, GERSHBAUM & ROTH, PLLC**
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801

*Pro hac vice* admitted

***Attorneys for Plaintiff and the Collective***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on **May 8, 2019**. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

*s/ Gregg I. Shavitz*
Gregg I. Shavitz, Esq.

## SERVICE LIST

*CIOMCIA v. BEALL'S INC.*
**CASE NO.: 2:17-cv-14444-JEM**
**The United States District Court for the Southern District of Florida**

Kevin D. Johnson
E-mail: kjohnson@johnsonjackson.com
Bridget E. McNamee
E-mail: bmcnamee@johnsonjackson.com
JOHNSON JACKSON LLC
100 N. Tampa St., Suite 2310
Tampa, FL 33602
Telephone: (813) 580-8400
Facsimile: (813) 580-8407

*Attorneys for Defendant*

**Served Via CM/ECF**